1 BILLY HENDERSON
2 CALIFORNIA CORRECTIONAL INSTITUTION
3 F-42480- REX DEAL- 42 low
4 P.O. BOX 107
5 TEHACHAPI, CALIF. 93581

FILED
AUG 31 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

10 BILLY HENDERSON,                                NO. 2:12-cv-0532-CKD
11        PLAINTIFF,
12 VS.
13 CALIFORNIA HIGHWAY PATROL.et al.,,
14        DEFENDANTS.                              OBJECTION TO TRIAL EXHIBITS

17 TO ALL PARTIES AND THIER ATTORNEYS OF RECORD:
18 THE PLAINTIFF BILLY HENDERSON hereby objects to the following exhibits:

20 On the date of August 05, 2015 the Plaintiff recieved trial exhibits from the defense in this
21 matter. The objections are as follows:

23 EXHIBIT A
24 The dispatch call reports that are to be presented as an exhibit in this matter are not actual
25 dispatch call recordings from the California Highway Patrol Dispatch call center. The source of
26 these reports are a CENTRALIZED CAD JOURNALING SYSTEM. The date and time of these reports are
27 not consistent with the date and time established by the defense as a FACT. The date and time

of the incident in this matter is January 17, 2230, not January 18, 03:18:02, 2011.

EXHIBIT C

The CHP 215 Notice to appear that are to be presented as an exhibit in this matter has a date of January 18, 2011, 321 a.m. This date and time is not consistent with the factual date and time that has been established by defense, as January 17, 2230.

EXHIBIT D

The Department of Motor Vehicle record that is to be presented as an exhibit in this matter does not specifically relate to the traffic violation that occurred on the date of January 17, 2011. There is information in this record that is not relevant to this matter, such as, the plaintiffs past driving record that consist of departmental action taken against the plaintiff. The date on this record is also January 18, 2011. This date is not consistent with the established established factual date in this matter.

EXHIBIT E

The Glenn Medical Center Patient Registration that are to be presented as an exhibit in this matter is dated January 18, 2011. This date is not consistent with the factual established date in this incident and is not consistent with the Glenn Medical Center Emergency Room Discharge Instructions form stamped and signature dated January 17, 2011, included with the documents, within this exhibit.

EXHIBIT F

The disposition of arrest and court action that are to be presented as an exhibit in this matter has information included that is not directly related to the incident occuring on the date of January 17, 2011, and is irrelevant. Part of this exhibit includes the plaintiffs arrest history from the year 1988 untill this present date.

The traffic collision repot that are to be presented as an exhibit in this matter has information attached that is not directly related to the incident that occured on the date of January 17, 2011. The information consist of

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)
OSP 10 119947

1  parole violations as well as aliases that were used by the plaintiff in
2  the past. This information has no relevance to this matter.The date on
3  these documents are also inconsistant with the date of incident. The date
4  of occurance in this matter is January 17, 2011.The date on these documents
5  are January 20, 2011.(EXHIBIT G)
6  EXHIBIT H
7  The Glenn County Jail Incident Report that is to be presented as an exhibit
8  in this matter that was recieved from the defense on the date of August 05,
9  2015 is not an authentic document. The plaintiff in this matter recieved the
10 same document through an informal request for medical records while
11 incarcerated at the Glenn County Adult Detention Facility during the criminal
12 proceedings in this matter in the year of 2011.Within the document that the
13 plaintiff recieved, in the last paragraph titled, Further Information: Corporal
14 Norwood states :On 1/17/2011@ approximately 1930 hours inmate henderson asked
15 what his charges were and why he was in jail.On the the document that was
16 recieved from the defendants in this matter, on the date of August 05, 2011,
17 the date in this paragraph is 1/18/2011, and there is no signature by
18 corporal norwood 1847 on this form. On the form that the plaintiff recieved
19 through informal discovery,the date is 1/17/2011 in this paragraph, and it
20 also consist of corporal norwoods signature. Furthermore, the date on this
21 form is not consistent with the date of the incident in this matter. The
22 plaintiff was transported to the Glenn County Adult Detention Facility on the
23 date of 1/17/2011, not on the date of 1/18/2011. This factual date of
24 occurance has been established by the defense. There is also information
25 in this document that is false. Corporal Norwood 1847 states ,the plaintiff
26 informed him that he was under the influence of a controlled substance and
27 alchohol. Under the penalty of perjury, I hereby declare that I was not

1. under the influence of any controlled substance, or alchohol, and did not
2. make this statement to Corporal Norwood 1847. This fact can be supported
3. by defendant R.Gardners testimony in the criminal proceedings in this matter
4. as being an expert in drug recognition. The testimony consisted of the
5. defendants credentials, as well as, his reasons for not performing a field
6. sobriety test, which was established as a fact based upon CHP R.Gardners
7. expertise, recognized by his own department. It was established that the
8. plaintiff was not under the influence of any drugs, alchohol, or any form
9. of medication, at the time of arrest in this incident.
10. Due to the various inconsistancies with this exhibit, as well as, the false
11. statement made by corporal norwood regarding the use of alchohol and drugs
12. , the plaintiff would also object to corporal norwood being an anticipated
13. witness to be called in this matter, by defense. Considering the facts that
14. have been presented bythe plaintiff in regards to this exhibit, the
15. credibility ofcorporal norwood 1847 is in question.
16. See Exhibit A
17. See Exhibit B

DATED: August 24, 2015

*Billy Henderson*
BILLY HENDERSON

# EXHIBIT A

Case 2:12-cv-00532-CKD   Document 90   Filed 08/31/15   Page 5 of 15

# Glenn County Jail
### Incident Report

Reporting Officer:    Corporal Norwood 1847
Inmate/ID #:          Billy Henderson 15600123814
Date:                 01/18/2011
Time:                 0520 hours
Location:             Booking Room

Incident:

On the above date and approximately 0515 hours, dispatched contacted the Jail requesting assistance for the California Highway Patrol (CHP) with a combative inmate. At approximately 0520 CHP entered the Sally Port. Based on prior information I knew that the inmate was very combative. I assisted Officers Gardner and Lazo remove the inmate from the Patrol Car. The inmate was handcuffed and his feet were secured with a Hobble Restraint device. The Inmate was escorted directly to the Safety Cell for his safety and security of the facility. In the safety cell Officers Lazo, Gardner, Woodman and myself, removed the restraints and clothing from Inmate Henderson. Henderson remained flat on the floor as all officers exited the Safety Cell.

All Officers exited the Safety Cell without incident.

Inmate Henderson was yelling and saying that the Devil is trying to kill him. Inmate Henderson yelled and slurred his words and was not making sense. Inmate Henderson continued to yell and pace around the Safety Cell during the remainder of the Graveyard shift.

Prior to Inmate Henderson being brought to the Jail, he had been in a high speed pursuit and accident. C.H.P. had asked for assistance at Glenn Medical Center for a combative subject. Willows P.D. and Glenn County Sheriff assisted at Glenn Medical Center. I was told by the C.H.P. Officers they had 5 different times that they had to hold the inmate down because he was fighting with them. C.H.P. had taken Inmate Henderson to Glenn Medical Center for a Medical Evaluation and clearance.

Reporting Officer:    Corporal Norwood 1847     *[signature]*

Further Information:
On 01/17/2011 @ approximately 1930 hours Inmate Henderson asked what his charges were and why he was in Jail. I asked if he remembered last night at all and he did not. I asked Inmate Henderson what drugs he had taken and he replied "crystal meth and alcohol. I asked how much and he replied" ½ gram of meth and a ½ pint of alcohol.

Corporal Norwood 1847

*Report received 1-19-11 -te*

*[signature] Jeremy R. Austin, MD*

JAN 19 2011

# Glenn County Jail
## Incident Report

Reporting Officer:   Corporal Norwood 1847
Inmate/ID #:         Billy Henderson 15600123814
Date:                01/18/2011
Time:                0520 hours
Location:            Booking Room

Incident:

On the above date and approximately 0515 hours, dispatched contacted the Jail requesting assistance for the California Highway Patrol (CHP) with a combative inmate. At approximately 0520 CHP entered the Sally Port. Based on prior information I knew that the inmate was very combative. I assisted Officers Gardner and Lazo remove the inmate from the Patrol Car. The inmate was handcuffed and his feet were secured with a Hobble Restraint device. The Inmate was escorted directly to the Safety Cell for his safety and security of the facility. In the safety cell Officers Lazo, Gardner, Woodman and myself, removed the restraints and clothing from Inmate Henderson. Henderson remained flat on the floor as all officers exited the Safety Cell.

All Officers exited the Safety Cell without incident.

Inmate Henderson was yelling and saying that the Devil is trying to kill him. Inmate Henderson yelled and slurred his words and was not making sense. Inmate Henderson continued to yell and pace around the Safety Cell during the remainder of the Graveyard shift.

Prior to Inmate Henderson being brought to the Jail, he had been in a high speed pursuit and accident. C.H.P. had asked for assistance at Glenn Medical Center for a combative subject. Willows P.D. and Glenn County Sheriff assisted at Glenn Medical Center. I was told by the C.H.P. Officers they had 5 different times that they had to hold the inmate down because he was fighting with them. C.H.P. had taken Inmate Henderson to Glenn Medical Center for a Medical Evaluation and clearance.


Reporting Officer:   Corporal Norwood 1847

Further Information:
On 01/18/2011 @ approximately 1930 hours Inmate Henderson asked what his charges were and why he was in Jail. I asked if he remembered last night at all and he did not. I asked Inmate Henderson what drugs he had taken and he replied "crystal meth and alcohol. I asked how much and he replied" ½ gram of meth and a ½ pint of alcohol.

Corporal Norwood 1847

# EXHIBIT B

1   I think we'll take five minutes so you gentlemen
2   can stretch your legs if you choose, and then we'll get
3   back. We're in recess, and you can inform the jurors
4   we're going to be another five minutes, madam bailiff.
5   We're in recess.
6       (Recess)
7       (The following proceedings were held in the
         presence of the jury.)
8
9   THE COURT: We are back in session and
10  counsel are present. The defendant's present. Each of
11  the jurors and alternate are present in their seats.
12  Officer Gardner is in the witness chair, and I believe
13  -- so the jurors know what happened, Mr. Smith withdrew
14  his objection in regards to the issue of --
15      MR. SMITH: The DRE.
16      THE COURT: -- DRE --
17      MR. SMITH: Yes, your Honor.
18      THE COURT: -- drug recognition. Mr.
19  Maloney, you may continue your direct.
20      MR. MALONEY: Thank you, your Honor.
21  FURTHER DIRECT EXAMINATION BY MR. MALONEY
22  Q   (By MR. MALONEY) I had asked you, sir, about the
23  subject of drug recognition experts. Are you one of
24  those?
25  A   I am.
26  Q   And could you describe to this jury what a drug

*D.R.E.* (margin annotations, left and right)

124

1  recognition expert is?
2  A    A drug recognition expert is an officer that's
3  chosen, for whatever reason, to go through additional
4  training, training above and beyond what most of the
5  other officers in their department receive.  Drug
6  recognition experts are recognized by chiefs of police.
7  A drug recognition expert that works for, say, San
8  Diego PD has the same training as a drug recognition
9  expert that works for the highway patrol or for the New
10 York City PD.
11 Q    Okay.  And could you describe to this jury what
12 the training is, the special training that a drug
13 recognition expert engages in in order to be certified
14 as such?
15 A    The actual program is about 80 hours above and
16 beyond normal DUI training, and then after the 80 hours
17 of classroom there's practical field certification
18 whereby officers go out on the street.  They make
19 arrests for DUI.  Then it's left to the DRE to
20 determine what chemicals or substances, if any, this
21 person has taken by category to prevent them from
22 safely operating a car.
23 Q    Okay.  So there are -- and this is a question.
24 There are certain things you can look for that happen
25 depending on the kind of drug that you might take?
26 A    That's correct.

125

1  Q    Okay.  And you're taught in recognizing all of
2  those things?
3  A    Yes.
4  Q    Okay.  And in this particular case you indicated
5  that with regard to the defendant no -- no tests --
6  chemical tests for alcohol or drugs was taken.
7  A    That's correct.
8  Q    And was that because you looked for all of these
9  things that you had the special training for and didn't
10 find any reason to give him such a test?
11 A    I looked for those things that I was capable of
12 looking at on the shoulder of a highway.  As part of
13 that examination normally we check pulse rate and blood
14 pressure.  We did what's called a dark room
15 examination.  It's much more indepth.  However, the
16 training lends itself to being more readily able to
17 determine whether or not somebody likely is under the
18 influence of a drug or alcohol or both.
19 Q    Okay.  And so in short then in the period of time
20 that you were with the defendant from the time of the
21 pursuit, the accident, the arrest, the incident at the
22 hospital, and the booking, at no time did you observe
23 anything that would suggest to you that he was -- based
24 on your expertise, that he was under the influence of
25 alcohol or drugs.
26 A    There were only two circumstances which would have

1  been given serious cause to believe that the defendant
2  had been under the influence of something. The first
3  would have been the original violation.
4      Speeding has often a slight effect of impairment;
5  also the belligerent nature while at the hospital. But
6  immediately following the collision while in our
7  presence in the patrol car driving to the hospital and
8  then after completing at the hospital on the way to the
9  jail there was no indication.
10     He was not stumbling. He was not mumbling. His
11 speech wasn't slurred. His eyes were clear. His
12 pupils were appropriately sized. There was no reason
13 to suspect that he was under the influence of anything.
14 Q   Okay. And when you say his eyes were
15 appropriately sized, are there things that you look at
16 besides just the color of their eyes to suggest some
17 kind of a drug?
18 A   Some drugs dilate pupils. Some drugs constrict
19 pupils. Some drugs have no effect on pupils. Some
20 drugs will make your eyes water. Some -- almost
21 everyone's seen a drunk at some point. Your eyes get
22 red and bloodshot. There are some drugs that will do
23 that as well. I saw no reason to believe that he was
24 under the influence of anything.
25 Q   Okay. And was there any odor of alcohol?
26 A   There was not.

127

1  Q    And does alcohol do things to your eyes?
2  A    Yes, alcohol is a CNS depressant. It does the
3  same things to your body that, say, Soma would.
4  Q    Okay. What are those things that it could do to
5  your eyes that would be visible to you?
6  A    It can dilate pupils. It can make them red and
7  watery or bloodshot. You would display nystagmus.
8  Q    What is that?
9  A    It's an involuntary jerking of the eyes, something
10 that no one can control. It happens naturally on
11 occasion but predominantly it's caused by a depressant,
12 a CNS depressant --
13 Q    Okay.
14 A    -- say alcohol or another drug that falls into
15 that category.
16 Q    And you didn't see any of that?
17 A    I did not.
18         MR. MALONEY: That's all I have.
19         THE COURT: I have one question just for
20 clarity although I assume most people might understand.
21 Could you tell us what CNS is?
22         THE WITNESS: Central nervous system.
23         FURTHER CROSS-EXAMINATION BY MR. SMITH
24 Q    (By MR. SMITH) So you're trained in detecting the
25 objective symptoms of intoxication, whether it be
26 street drugs, medication or alcohol?

1  A    All highway patrolmen are trained. I have been
2  given training above and beyond the bulk of the other
3  officers, yes.
4  Q    You observed my client sufficient to judge his
5  respiration, breathing, his eyes, and his demeanor, his
6  odors, his walking. And you did not decide to test him
7  further because, in your opinion, he was not under the
8  influence of drugs, alcohol or any form of medication.
9  A    That's correct.
10 Q    Officer, I refer to all those things as drugs, but
11 sometimes people make a distinction in their mind. But
12 -- so as an expert recognized by your own department he
13 was sober?
14 A    Yes.
15          MR. SMITH: All right. I have no further
16 questions on this line of inquiry, your Honor. I think
17 the officer's now technically recalled on direct; is
18 that correct?
19          THE COURT: If you'd like to call him on
20 direct, that's what --
21          MR. SMITH: No, I'm just trying to think if
22 that's where we left off, your Honor. I guess I'm
23 getting old and confused.
24          THE COURT: I think where we left off was
25 that Mr. Maloney had finished other than the area we've
26 covered. I think you were finished other than the area

129

# PROOF OF SERVICE BY MAIL

(Cal. Code of Civ. Pro. §1013, FRCivP 5(b) (2) (C), FRAP 25(c) (1) (A))

I, __Billy Henderson__, declare that I placed a true and correct copy of the following document(s):

__Objection to Trial Exhibits__

in a fully first-class, postage paid envelope and addressed it to:

Robert H. Zimmerman
Attorney at Law
400 University Avenue
Sacramento, Calif. 95825-6502

Henny V. Nguyen
Office of the Attorney General
P.O. Box 944255
Sacramento, Calif. 94244-2550

I further declare that I followed institutional procedures for the processing of outgoing legal mail and turned the sealed envelope over to prison officials for mailing on the date below.

The foregoing is true and correct under penalty of perjury. Executed this __24__ day of __August__, 20__15__ at Tehachapi, CA.

Signed: __Billy Henderson__

(Attach to document)